**WISDOM v. MINCHEN et al.**

No. 11115.

Court of Civil Appeals of Texas. Galveston.

July 10, 1941.

Rehearing Denied Oct. 2, 1941.

Walter F. Brown, of Houston, and Carlos B. Masterson, of Angleton, for appellant.

A. R. Rucks, of Angleton, Andrews, Kelley, Kurth & Campbell, Lawrence Lipper, Albert J. DeLange, and Fulbright, Crooker & Freeman, all of Houston, and Robt. M. Lyles, of Angleton (W. M. Streetman, Nowlin Randolph, and Leon Jaworski, all of Houston, of counsel), for appellees.

CODY, Justice.

This suit was brought by appellees S. Minchen, Breitermann Holding Corporation of Texas, Reppil Oil Company, Mrs. Beaula M. Munzesheimer, Mrs. Gussie Coleman (joined by her husband), and H. & N. Company, to remove the clouds cast on their title to interests to which they succeeded from the original lessee in that oil, gas and mineral lease, dated March 11, 1922, from appellant, Mrs. Belle Wisdom, and G. H. Wisdom, William A. Vinson and G. H. Irish, covering a tract of 840 acres of land in the A. Darst League, Brazoria County; and in their petition the aforesaid appellees asked that the court determine the interest of E. Cockrell, H. C. Cockburn, and Houston Royalty Company (said Cockrell, Cockburn and Royalty Company, it is here now stated for simplification, succeeded to the ownership of the permanent royalty interest of the lessor G. H. Irish); and said appellees asked the court for six months from and after the final judgment in which to begin drilling operations under the aforesaid lease. In their petition, said appellees alleged that pursuant to the terms of the lease that they, and their predecessors in title had drilled some 18 wells on the lease; and had expended approximately $675,000 in the development of the lease to March, 1938, and had produced approximately 425,-000 barrels of oil; that on December 12, 1935, they had received from appellant a letter declaring a forfeiture of the lease; that the lease required ten days' written notice by lessors of any default by lessees of any obligation under the lease, but appellant never gave any such notice, and refused to inform appellees of the grounds of her complaint, and undertook to eject said appellees from the lease (except as to 5 acres around each well): that though further efforts were made to operate said lease, the conduct of appellant and her agents

forced a discontinuance of further operations: that the lessee obligations had in nowise been breached, but if any default had occurred appellant had waived same by permitting said appellees to continue to expend money in further operations up to December 12, 1935, and so appellant was estopped to assert any defaults 'allegedly occurring before that time.

Appellant answered by a general demurrer and general denial, and a cross-action alleging that at the time the lease was executed the land was owned by herself and G. H. Wisdom, and that the other lessors, William A. Vinson and G. H. Irish owned merely a ¼₈th royalty interest in the oil, gas, sulphur and other minerals, and that the lease is no longer in force, having expired by its terms; that no oil, gas or other minerals had been produced from said land in paying quantities, or in any quantities for many years. In said cross-action appellant also alleged that sulphur and a mineral substance known as vitalitas have been found to exist on said leased premises and that lessee, and those claiming under lessee, have never produced nor attempted to produce either of said minerals; also that the state and county ad valorem taxes on the premises covered by said lease for the year 1935 were much increased over the amount of taxes levied for the year 1921, and that the lessee and those claiming under lessee had failed to pay their part of said increase, as by the terms of the lease they were so bound, before said taxes became delinquent; that the claims of cross-defendants constituted a cloud upon the title of cross-plaintiff, and she prayed removal thereof.

It is unnecessary to extend this opinion by giving the pleadings of the other parties as there is no claim that the judgment rendered by the court in their favor was not justified by their pleadings.

At the conclusion of the case the appellees requested a peremptory instruction of verdict in their favor against appellant; and she requested a like instruction in her favor. Appellees' request was granted, and the court accordingly rendered judgment in favor of appellees and against appellant.

It is not necessary to set forth the lease in full. Under the contentions urged by the parties, except as hereinafter indicated, only paragraphs IV, VII, XIV, and XXI are here relevant. Accordingly these paragraphs of the lease will be here quoted verbatim:

"IV. Lessee agrees to begin the actual drilling for oil upon said premises within ninety (90) days from the date of this lease and thereafter to prosecute the drilling of the said well with all reasonable diligence, skill and dispatch to the depth or strata in which oil may be reasonably expected to be found in the field in which said leased premises are situated, and within ninety (90) days after the completion or abandonment of the first well to begin drilling operations upon second well, and thereafter prosecute the drilling of such second well with all reasonable diligence until the completion thereof to the depth provided for the drilling of the said first well or abandonment thereof, and thereafter to continue said drilling operations upon a succeeding well within ninety (90) days after the completion of the prior or preceding well, not allowing more than ninety (90) days to elapse between the completion or abandonment of one well and the beginning of drilling operations upon another well, until fifteen (15) wells shall have been drilled. Thereafter the intervals between wells shall be extended to six months, until a total of thirty-five (35) wells shall have been drilled. Thereafter, the intervals between wells shall be extended to nine months; Provided, however, the provisions of this paragraph are subject to and qualified by the provisions of Paragraph XII hereinafter set out."

"VII. Should any minerals other than oil or gas be found in paying quantities upon said leased premises, Lessee shall have the right, but shall not be required, to mine, produce or develop such other minerals, or any one or more of them, provided that Lessee shall forfeit all right in or to any such other minerals (other than oil or gas) which shall not be produced by Lessee with reasonable diligence after it has been ascertained that such minerals exist upon said land in commercial quantities."

"XIV. It is understood and agreed that if Lessee shall fail to begin drilling operations upon said premises within ninety (90) days from the termination of said Fowler suit, however its termination may be brought about, or within ninety (90) days after Lessee shall be protected against said suit by some settlement or agreement, or if Lessee, after beginning drilling operations upon said premises, shall fail to carry the same on with reasonable diligence, or if Lessee, after beginning drilling operations on said premises shall permit as many as

ninety (90) days to elapse at any one time between the completion or abandonment of one well and the beginning of drilling operations on a succeeding well, until fifteen wells shall have been drilled upon said land, or if after fifteen (15) wells have been drilled upon said land Lessee shall permit as much as six (6) months to elapse between the completion or abandonment of the last well and the beginning of drilling operations upon a succeeding well, until thirty-five (35) wells shall have been drilled upon said land Lessee shall permit as much as nine (9) months to elapse from the completion or abandonment of the last well and the beginning of drilling operations upon a succeeding well, or if Lessee shall continue to remain in default as to any of the provisions or terms of this lease, or any of lessee's undertakings herein contained after ten (10) days' written notice by Lessors, or either of them, of such default, this lease shall, at the option of Lessors, or either of them, immediately cease and terminate.

"It is understood that Lessors shall not be required to act jointly in regard to any of the terms, provisions or conditions of this lease, but either one of them may insist upon and enforce any of the terms, provisions, conditions or forfeitures herein provided."

"XXI. It is understood and agreed that, in addition to the other provisions of this lease, after Lessee shall have found oil, gas or sulphur in paying quantities on said leased premises, that thereafter Lessee shall, with all reasonable diligence, drill, operate and develop said premises for the oil, gas and minerals deposits, and produce the same therefrom, it being understood that one of the main considerations for the making of this lease is to secure the development of said premises for their oil, gas and mineral deposits and the production of same therefrom, and if Lessee shall, after the time herein fixed for drilling operations to begin, fail to carry on drilling operations and operations for the development of said premises and the production of the oil, gas and mineral deposits therefrom with reasonable diligence, this lease shall, at the option of Lessors, or either of them, immediately cease and terminate. The foregoing provision is subject, nevertheless, to all of the provisions of Articles IV and XIV and XVII."

It is appellant's contention that there is ample evidence before the court to establish that prior to the filing of this suit the lease had expired by its own terms, and that the court should have instructed the verdict for appellant, and not for appellees. Paragraph XIII of the lease provides:

"XIII. Subject to the other provisions hereof, including the developments by Lessee of said leased lands as herein provided, this lease shall, unless sooner terminated under the provisions hereof, continue and remain in force for the period of five years from the date thereof, and as much longer as Lessee shall with reasonable diligence operate said leased lands and produce oil, gas or sulphur therefrom, in paying quantities, or shall continue drilling operations thereon, as herein provided, with reasonable diligence to produce oil, gas or sulphur therefrom."

Appellant states that the evidence shows that the lease has not produced oil or gas in paying quantities since the last of December, 1935; and that more than 6 months elapsed between the completion of the well No. 15, on May 4, 1936, and the commencement of well No. 16, on November 5, 1936; that only 14 wells had been drilled before well No. 16 was commenced; that an unexcused cessation of drilling operations on well No. 16 for six months time occurred; that nothing whatever has been done on the lease since 1938.

Now the evidence shows that the Intercoastal Oil Company was engaged in drilling well No. 14 on December 4, 1935, and that it was then in a failing financial condition, and that on said date it abandoned the drilling of said well at a depth of 852 feet, and wrote a joint letter of notification to that effect to (1) H. & N. Company, Houston, Texas; S. Minchen, Houston, Texas; Lawrence Lipper, Houston, Texas; and to appellant. Then, on December 12, 1935, appellant wrote the following letter:

"Houston, Texas, December 12, 1935.
Intercoastal Oil Company,    Mr. L. A. Layne,
8000 Market Street Road,    8000 Market Street, Road,
Houston, Texas    Houston, Texas

H. & N. Company,    Mr. Lawrence Lipper,
Esperson Building    Houston, Texas
Houston, Texas

Mr. S. Minchen,    Brazo Oil Company,
Houston, Texas    Houston, Texas

"Gentlemen:
"The lease dated March 11, 1922, from Belle Wisdom, et al., to Southern Petroleum Company, covering 840 acres on the A. Darst League, Brazoria County, Texas, is subject to cancellation and termination according to its terms, and lessees having

failed to carry out the terms, provisions and conditions of said lease and being now in default.

"I have heretofore notified the Intercoastal Oil Company and L. A. Layne, and I hereby notify you, and each of you, that I have elected, and do now elect, to exercise my option as one of the lessors in said lease, that such lease shall immediately cease and terminate. You are hereby notified that said lease has ceased and terminated and is no longer of any force and effect except as to such wells as are actually producing oil or gas in paying quantities on said lease, and the land reserved from forfeiture on account of such wells under the terms and provisions thereof.

"Yours very truly,
"(Signed) Belle Wisdom."

■■ It seems to have been appellant's theory that she (she succeeded to the rights of G. H. Wisdom; and William A. Vinson and G. H. Irish owned merely perpetual royalty interests in the land) could declare a forfeiture of the operating interest under the lease if any default occurred in operating thereunder. The foregoing letter is in line with that theory, and is clearly a declaration of forfeiture. But this theory of appellant is a mistaken one. Paragraph XIV of the lease, copied hereinabove, gives this security and right to the owners of the working interest in the lease, "or if lessee shall continue to remain in default as to any of the provisions or terms of this lease, or if the Lessee's undertakings herein contained after ten (10) days' written notice by Lessors, or either of them, of such default, this lease shall at the option of Lessors or either of them immediately cease and terminate." It is now the settled law of this State that the rule of construction against the right of forfeiture is as applicable to oil leases as it is to other characters of grants. "This rule of construction is universally applied to oil leases. It must therefore be held that, if this contract is fairly susceptible of two interpretations, it should be so construed as to prevent a forfeiture of the rights granted thereunder." Ryan v. Kent, Tex.Com.App., 36 S.W.2d 1007, 1011. The provision of paragraph XIV which gives the lessee the right of ten days' written notice of any default before declaring any forfeiture therefor seems clear and unambiguous. But certainly under the foregoing rule of construction it cannot be rightly contended that appellant had the right to claim a forfeiture for a default without giving the operators ten days' notice, and an opportunity to remedy such default. The evidence therefore which appellant recounts of alleged defaults occurring in operating under the lease of prior to the writing of her letter of December 12, 1935, is thus irrelevant, and will not be considered.

■ After appellant wrote the letter of December 12, 1935, she instructed her agent, Randolph, to go on the lease and notify every one who came on the property that the lease was terminated. She placed an affidavit of record in Brazoria County to the effect that the lease was forfeited. She notified the Humble Oil & Refining Company, the purchaser of the oil from the lease, that the lease had been forfeited. In Morgan v. Houston Oil Company, Tex. Civ.App., 84 S.W.2d 312, 314, it was held: "It is well settled that when a lessor determines to forfeit or cancel an oil and gas lease, and puts the lessee on notice thereof, he cannot complain if the latter suspends operations under the contract, pending the determination of the asserted right of the lessor to forfeit or cancel. Lane v. Urbahn, (Tex.Civ.App.) 265 S.W. 1063, par. 3 (writ refused); Edgar v. Bost (Tex.Civ.App.), 14 S.W.(2d) 364; Johnson v. Montgomery (Tex.Civ.App.) 31 S.W.(2d) 160 (writ refused)." See, also, Gwynn v. Wisdom, 119 Tex. 320, 30 S.W.2d 298. The owners of the working interest were not bound therefore to continue after such notice of forfeiture to develop the lease, and the lease will not be held to have expired because they did not continue such development. We overrule appellant's contention that the evidence established that the lease expired by its own terms, in that it ceased to produce oil in paying quantities after the primary term of five years, and in that the owners of the working interest did not continue development.

■ The lease provides that if, after beginning drilling operations upon the leased premises, the lessee shall fail to carry the same on with reasonable diligence, said lease shall, at the option of the lessors or either of them, immediately cease and terminate. It is appellant's contention that there was ample evidence to authorize the cancelation of the lease under this provision. This provision was subject to ten days' written notice, and what has already been said applies equally to this contention of appellant, and without further elaboration on what has been said, the contention

of appellant last referred to will be overruled.

█ It is next contended by appellant that the lease has terminated on account of a breach of one of its conditions subsequent, to-wit: the agreement to pay taxes, and that for this reason the court erred in peremptorily instructing the verdict in favor of appellees and against appellant. This contention is based upon a provision in the lease to the effect that if taxes were increased upon the property during the life of the lease that ⅚ths of the increase should be paid by the lessee, ½₂th of the increase by lessor Mrs. Wisdom (appellant) and ⅙th by lessor G. H. Wisdom (who lost his interest to appellant), and ¼₈th by W. A. Vinson and G. H. Irish. In connection with said provision it was provided that if any of the parties failed to pay their proportionate part of said tax increase, it could be paid by the other parties, or any of them, and such payment was fixed as a lien on the interest of the defaulting party in favor of the party who paid same. It was not the intention of the lease to make failure to pay such tax increase a ground of forfeiture of the rights of the one failing to pay such tax increase. Furthermore appellant did not give ten days' written notice, etc. This contention therefore must be overruled.

█ As already pointed out, the lease contains a provision that, should minerals other than oil or gas be found in paying quantities upon said leased premises, the lessee should have the right, but not be required, to mine, produce or develop such other minerals, or any of them, provided that the lessee shall forfeit all rights in and to such other minerals which shall not be produced by the lessee with reasonable diligence after it had been ascertained that such minerals existed upon said land in commercial quantities. Appellant complains that the court's instruction required that a verdict be returned for appellees for leasehold rights in all minerals, and was not limited to oil and gas, whereas appellant claims this was error because the proof showed that a mineral known as vitalitas existed on the property, and that Mr. Layne who was directing operations on the lease said that he had no intention of developing the property for vitalitas. Also that Mr. Layne testified that the Union Sulphur Company had investigated the land for sulphur, but that he had determined so far as sulphur was concerned it was impossible to mine it because Mrs. Wisdom owned the property across the top in strips, and it would be impossible to mine the sulphur without getting the other fellows' sulphur. There is no proof in the record what vitalitas is, and what its value is, and that if it has value that it was so present in the leased premises that it could be profitably recovered, or what was the expense attendant upon mining vitalitas, if it is mined. In this section of the country courts will take judicial notice of the way in which sulphur is mined, and that the expense of putting in a plant for obtaining sulphur is very expensive. There is not the slightest evidence that sulphur was present on the premises in question in such profusion as to justify the extraordinary expense of erecting a plant for obtaining sulphur therefrom. Neither is there any evidence that sulphur was present in the section in paying quantities so that, if the land in question were pooled with other lands, it could be profitably mined. Sulphur is widespread in the Gulf coast area, but the areas in which is sufficiently concentrated to be mined in "paying quantities", so far as is known, are few indeed. We therefore must overrule appellant's contention.

█ Appellant also urges that the court erred in decreeing that appellees be allowed six months from the date of final judgment in which to resume actual drilling operations under the terms of the lease. Appellant contends that what is a reasonable time in which to begin drilling operations is a question of fact that should have been submitted to the jury. In Federal courts of equity the judge determines the time when operations should be begun again where they have been stopped wrongfully by the land owner. Amerada Petroleum Co. v. Doering, 5 Cir., 93 F.2d 540, 114 A.L.R. 1385. Of course, this may be because Federal courts of equity operate as did courts of equity in England, that is, they operate without juries. But the court in this instance only applied the contract provision of the lease as near as might be. The lease provides that after 15 wells have been drilled, the period of time to elapse between the drilling of wells shall be six months. The court necessarily found from the evidence as a matter of law that appellant wrongfully declared the lease forfeited and interfered with appellees in their operations under the lease. In determining the length of time within which appellees must begin operations under the

lease, the court must be controlled by the principle that no one shall be allowed to profit by their own wrong. Since the court, by instructing a verdict against appellant, found as a matter of law that appellees were wrongfully stopped in operating under the lease so as to justify and require a suit to have their right to continue operations adjudicated, we think that the court did not err in fixing the greatest time applicable under the contract (after fifteen wells had been drilled) for commencing to drill a new well after the completion of a well, as the time for commencing drilling after appellant's rights have been adjudicated. The only way to insure that appellant shall enjoy no profit from wrongfully forcing appellees to vindicate their right to operate the lease, is to provide in the judgment sustaining such right that they shall have six months from the time such judgment becomes final in which they must begin operations. Appellant's said contention is overruled.

Appellant complains by assignments of error Nos. 20 to 58, inclusive, of the exclusion of testimony offered by appellant tending in its nature to show defaults in operating the lease in connection with the first 13 wells. Appellees state that for the most part appellant failed to perfect her bills of exception by showing therein what the answers would have been, had the witness been allowed to answer. However, the reason for this omission by appellant is apparent to us because such testimony relates to operations occurring prior to the drilling of well No. 14. Well No. 13 was completed on July 10, 1935. And well No. 14 was begun on September 28, 1935, and was continued thereafter until it was stopped as hereinabove stated. After well No. 13 had been completed, there was no notice of default given by appellant. Appellant permitted the expense of drilling well No. 14 to go forward. If it should be conceded for sake of argument that appellant had the right to forfeit the lease for defaults before work on well No. 14 began, she could not with knowledge of such facts, stand by and permit operations to continue under the lease. "It is universally held that a grantor entitled to re-enter or forfeit an estate on breach of condition, who does not exercise this right when facts within his knowledge occur that would entitle him to do so, has waived his right or is estopped from exercising it, in all cases in which, after breach of condition, he permits the grantee, without objection, to prosecute the enterprise, and expend large sums of money in so doing, which must be lost to the grantee if a forfeiture be subsequently allowed. If a grantor, so situated, on breach of condition, desires to terminate an estate, good faith requires him to act promptly, and on failure to do so he should not be permitted to reap the benefit of money subsequently expended or labor bestowed, when by his failure to assert his right he induced a grantee to believe he would not, and to continue the expenditure of money." Benavides v. Hunt, 79 Tex. 383, 15 S.W. 396, 399. See, also, Stitz v. National Producing & Refining Company, Tex.Civ.App., 247 S.W. 657, and Lane v. Urbahn, Tex.Civ.App., 289 S.W. 173.

The provision in the lease which required appellant to give the operators under the lease ten days' written notice of any default, was not an onerous one. Its manifest purpose was to present a forfeiture by enabling the operator to remedy the default. Under such a provision operators can feel secure in investing heavily in developing a lease. Without giving such notice appellant could not qualify to exercise the remedy of forfeiting appellees' rights.

Finding no reversible error, the judgment of the trial court ought to be affirmed, and it will be so ordered.

Affirmed.