**ADAMS v. CANNAN et al.**

No. 12461.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 19, 1952.

Rehearing Denied Dec. 31, 1952.

Lloyd & Lloyd, Alice, for appellant.

Perkins, Floyd & Davis, Alice, for appellees.

NORVELL, Justice.

Appellant, O. S. Adams, as plaintiff below, brought this suit against Morris Cannan and others for the purpose of having it judicially determined that an oil and gas lease upon his property had terminated. The lease was dated January 21, 1949. Adams was the lessor and I. K. Howeth, the lessee. Appellees are Howeth's assignees. Judgment was rendered after trial to a jury denying Adams the relief which he sought, except as to Howeth, who filed a disclaimer.

The controlling issue of this case relates to the effect which should be given to a letter written by Adams to the appellees. The theory upon which the judgment rests is that this letter excused the appellees' performance of certain matters specified in a clause of the lease contract. The primary term of the lease had expired, production had been obtained and then ceased. The habendum clause of the lease provided that:

"It is agreed that this lease shall remain in force for a term of one (1) year from this date, said term being hereinafter called 'Primary Term,' and as long thereafter as oil or gas, or either of them is produced from said land by the lessee."

The lease further provided that:

"It is specially agreed that in the event that oil or gas is being produced or is obtained from said premises after the expiration of the primary term hereof and said production shall for any reason cease or terminate, lessee shall have the right at any time within ninety (90) days from the cessation of such production to resume drilling operations in the effort to make said leased premises again produce oil or gas, in which event this lease shall remain in force so long as such operations are continuously prosecuted, as defined in the preceding paragraph, and if they result in production of oil or gas, so long thereafter as oil or gas is produced from the premises."

The *preceding paragraph* referred to stated that "drilling operations shall be considered to be continuously prosecuted if not more than sixty (60) days shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of a subsequent well."

The issues submitted and the jury's answers thereto are as follows:

"Special Issue No. One: Do you find from a preponderance of the evidence that the Morris Cannan O. S. Adams well ceased production of oil or gas in paying quantities for a period of 90 consecutive days prior to June 27, 1950? Answer: No.

"Special Issue No. Two: Do you find from a preponderance of the evidence that the defendants, their servants, agents or employees failed to conduct drilling operations on the lease in question for a period of ninety consecutive days during the latter part of March, and the months of April, May, June and July of 1950? Answer: Yes.

"Special Issue No. Three: Do you find from a preponderance of the evidence that the defendants, their servants, agents, or employees failed to conduct drilling operations on the lease in question for a period of 90 consecutive days prior to June 27, 1950? Answer: Yes."

It is undisputed that oil production terminated during the latter part of March, 1950, and was not resumed until some time in August of said year. The well ceased

to flow some time early in March and thereafter, in order to secure production, it became necessary to procure gas from an outside source in order to start and maintain the flow of oil. The jury found that there was a ninety-day period during the latter part of March and the months of April, May, June and July, 1950, during which no drilling operations were being conducted and that there was a period of ninety days in which drilling operations were not conducted prior to June 27, 1950, the date Cannan received the letter hereinafter discussed. The jury evidently believed that the date upon which the well ceased to produce was a few days short of the ninety-day period immediately prior to June 27, 1950. The trial court took the position that for Adams to recover it was essential that he establish that the well ceased producing ninety days before the receipt of the letter, on June 27, 1950, and that the jury's answer to Special Issue No. 1 was fatal to appellant's claim.

It appears that on March 1, 1950, appellant's attorney sent the following letter to appellee Morris Cannan, viz.:

"Dear Mr. Cannan:

"Mr. O. S. Adams, Alice, Texas, tells us that about a year ago he executed an oil, gas and mineral lease in favor of Mr. I. K. Howeth, San Antonio, Texas, on 250 acres of land owned by Mr. Adams near Alfred, with the understanding that a well was to be commenced within 120 days. Mr. Adams is informed that a well was drilled but no royalty has been paid to him since the well was drilled.

"Mr. Adams tells us that it is his information the well is not producing oil in paying quantities and that for a period of some months, the exact time he could not definitely state today, the well failed to produce any oil, gas or other minerals.

"Mr. Adams feels that something ought to be done with the lease and asked us to take the matter up with you. Frankly, he believes the lease has terminated but would like to be reasonable about the matter if some adjustment can be made. Will you please write us at your early convenience? * * *"

On March 7, 1950, Cannan answered the attorney and stated that the Adams well had been producing continuously since it had been drilled except when remedial work was necessary; that the Sinclair Oil & Gas Company, the purchaser of the oil, was notoriously slow in making its payments and he had written a letter to the Sinclair Company, a copy of which was enclosed. The copy of the letter to Sinclair indicated that Mr. Adams and other owners of royalty interests were concerned over nonpayment for the oil runs, and that Adams had suggested terminating the lease for that reason. It was said that this delay might be due to some dissatisfaction with the title to the working interest of the lease but there was "probably no question relative to the royalty owners' interest and that these people could possibly now be paid."

Apparently nothing further was done or said with reference to the matter until June 26, 1950, when Adams' attorney again wrote to Mr. Cannan. This letter is relied upon by appellees as excusing their failure to resume operations to make the leased premises again produce oil or gas within the specified ninety-day period. The letter reads as follows:

"Dear Mr. Cannan:

"We have had some previous correspondence about the lease executed in January, 1949, by Mr. O. S. Adams, Alice, Texas, in favor of Mr. I. K. Howeth, covering 250 acres out of 700 acres owned by Mr. Adams in Jim Wells County. It is Mr. Adams' understanding that the lease has been assigned to you and his information is that no oil has been run to the pipeline from the well drilled on the land since the latter part of March, 1950, and that no oil has been produced from the land since the latter part of the same month. It is his information also that there has been no drilling or reworking operations on the land since the production ceased.

"Under the circumstances, and since the primary term of one year has expired, it would seem that the lease has terminated for failure to produce oil and gas, or either of them.

"Mr. Adams has asked that we prepare and send to you a release of the lease and you will find it enclosed. He requested that we ask you to execute the release and return it to us for delivery to him. * * *"

The rule relied upon by appellees is one of equitable estoppel, and the generally accepted statement thereof is that made by the late Chief Justice Smith of this Court in Morgan v. Houston Oil Co., Tex. Civ.App., 84 S.W.2d 312, 314, viz.:

"It is well settled that when a lessor determines to forfeit or cancel an oil and gas lease, and puts the lessee on notice thereof, he cannot complain if the latter suspends operations under the contract, pending the determination of the asserted right of the lessor to forfeit or cancel."

Other cases supporting the doctrine and cited by appellees are, Consumers Gas Trust Company v. Worth, 163 Ind. 141, 71 N.E. 489 (wherein, according to appellees, the doctrine was first applied to an oil and gas lease); Weaver Mining Company v. Guthrie, 189 Mo.App. 108, 175 S.W. 118; Leonard v. Busch-Everett Company, 139 La. 1099, 72 So. 749; McCallister v. Texas Co., Tex.Civ.App., 223 S.W. 859; Lane v. Urbahn, Tex.Civ.App., 265 S.W. 1063; Edgar v. Bost, Tex.Civ.App., 14 S.W.2d 365; Johnson v. Montgomery, Tex.Civ. App., 31 S.W.2d 160, 165; Wisdom v. Minchen, Tex.Civ.App.; 154 S.W.2d 330; Shell Oil Company v. Goodroe, Tex.Civ.App., 197 S.W.2d 395; Wheelock v. Batte, Tex. Civ.App., 225 S.W.2d 591; and 31 Tex.Jur. 287, Oil and Gas, § 163, in which the language of Morgan v. Houston Oil Co., supra, is paraphrased.

In the briefs some distinction is suggested between forfeiture cases, where notice is necessary to terminate an estate, and a leasehold interest which expires by the terms of limitation contained in the lease. We are here concerned with the latter type of estate, and it is sufficient to say that for the doctrine of estoppel to apply, as contended for by appellees, it is necessary that the lease be subsisting and that the notice of claim asserted against it be a clear, unequivocal challenge to the lessee's title in and to his interest created by the lease. The doctrine applies when the lessor takes the position and makes the same known to the lessee (or his assignees), that he, the lessor, is the owner of the property to the exclusion of all rights formerly held or claimed by the lessee. For this purpose, the filing of a suit asserting the claim, or the giving of an unequivocal notice, may be sufficient. Johnson v. Montgomery, Tex.Civ.App., 31 S.W.2d 160, 165; Shell Oil Co. v. Goodroe, Tex.Civ.App., 197 S.W.2d 395; Wheelock v. Batte, Tex. Civ.App., 225 S.W.2d 591.

We do not regard the letter received by appellees on June 27, 1950, as presenting a clear, unequivocal challenge to lessees' title which is an essential basis of the doctrine relied upon. Although a release of the oil and gas lease was requested and there was some evidence that Adams had considered leasing the property to the Texas Company, should he be successful in securing the release, the letter itself does not purport to be a firm declaration of a position or contention that Adams held title to the premises involved to the exclusion of all rights of the appellees. The first paragraph is nothing more than Mr. Adams' statement of his understanding of the physical conditions affecting the well and production therefrom. The statement in the second paragraph that "it would seem that the lease has terminated" is based upon the circumstances outlined in the first paragraph. The fair inference is that if Mr. Adams' understanding be correct, then the lease has expired. This differs widely from an unqualified notice that the lease no longer possesses validity and the lessor claims all title to the premises. The third paragraph of the letter, which relates to a release, is likewise conditional. The letter as a whole contains no positive challenge to appellees' title to the lease. It may be reasonably construed as a request for a release or (alternatively) a request for an

explanation of the facts relative to the operation and production of the well in the event appellees were still asserting that the lease possessed vitality. If the letter be ambiguous in any particular, the previous letter of March 1st could be considered. This instrument, together with the reply thereto, discloses an admitted nonpayment of royalties since the drilling of the well. While appellees may not have been responsible for this, the inquiry on the part of the lessor was a natural one. This situation does not appear to have been remedied and hence the letter received by appellees on June 27, 1950. A lessor has a legitimate interest in the operation of a well, and the lessee will not be excused from performance of the covenants of the lease by reason of inquiries on the part of the lessor, provided no statements amounting to a clear repudiation of the lessees' title are made.

We have found no case that goes to the extent of predicating an estoppel upon a letter similar to that involved here. The distinction between the letter now before us and the notice set forth in Shell Oil Co. v. Goodroe, Tex.Civ.App., 197 S.W.2d 395, is readily apparent. Perhaps the nearest case, insofar as evidence is concerned, is that of Wheelock v. Batte, Tex.Civ.App., 225 S.W.2d 591, 595, involving an oral notice. However, in that case the Court of Civil Appeals pointed out the unequivocal, although mistaken position taken by the lessor and concluded that by reason thereof he "should not complain that appellants (lessees) in the exercise of caution and prudence, ceased expensive drilling operations until the question raised by appellee (lessor) could be authoritatively settled."

■ We hold, under the facts of this case, that appellees without giving appellant further information as to their handling of the well or making further inquiry of lessor as to his position, were not justified in their failure to commence operations within the ninety-day period prescribed by this lease. The matter is controlled by the written letter in evidence and a question of law alone is presented. Special Issue No. 1 relates to the time of the receipt of the letter with reference to the time the well ceased to produce. The construction of the letter and its effect present legal rather than factual problems. Judgment should have been rendered for appellant upon the jury's findings.

■■ Appellees present a seemingly alternative contention, i. e., that the judgment here should be considered as one rendered non obstante veredicto. The transcript discloses that appellees' motion for judgment contained an alternative prayer for judgment non obstante veredicto. The decree simply recites that this motion was "sustained" and judgment accordingly rendered for the appellees. We necessarily assume, nothing appearing to the contrary, that judgment was rendered in accordance with appellees' primary prayer rather than the alternate prayer of the motion. However that may be, we are of the opinion that it can not be said that the jury's answers to Special Issues Nos. 2 and 3 have no support in the evidence. We are further of the opinion that the disposition of this cause is determined by a specific clause of the lease rather than any implied or inferred provisions relating to the taking of reasonable action after cessation of production. We also believe that the controlling issue relates to the termination of a lease by its own limitations and a question of "abandonment" is not presented.

Under Rule 434, it becomes our duty to render such decree as the court below should have rendered. It is accordingly ordered that the judgment appealed from be reversed and judgment here rendered for appellant decreeing that the lease executed by him to I. K. Howeth, lessee, dated January 21, 1949, and recorded in Volume 72, on pages 320–322 of the Oil and Gas Lease Records of Jim Wells County has terminated and that the cloud cast upon appellant's title to the lands described therein by reason of the existence and recordation of such lease should be and is hereby removed as against any and all of the appellees herein.

Reversed and rendered.