**SUNRAY DX OIL COMPANY, Appellant,**

v.

**TEXACO, INC., Appellee.**

No. 5839.

Court of Civil Appeals of Texas.

El Paso.

June 21, 1967.

Rehearing Denied July 19, 1967.

M. Darwin Kirk, J. P. Greve, Rufus N. McKnight, Jr., Tulsa, Okl., Perkins & Kerwin and M. J. Kerwin, Jr., Midland, Norbert E. Proctor, Jr., Tulsa, Okl., for appellant.

W. N. Sands and J. S. Rowe, Midland, for appellee.

## OPINION

PRESLAR, Justice.

This suit was brought by Texaco against Sunray DX Oil Company seeking a declaration that an oil and gas lease had terminated, and for cancellation of same as a cloud upon the title to the land, and a declaration that title to all machinery, fixtures, casing in wells, and improvements placed on the land by the lessee was vested in Texaco Inc. Both parties moved for summary judgment and the trial court denied defendant Sunray's motion and granted that of plaintiff Texaco, and defendant's plea in abatement was overruled.

Appellant, as defendant, filed its plea in abatement that the Trustees of Texas Pacific Land Trust, as owners of the surface rights and of royalty interests in

the land and as the original lessors of the oil and gas lease, are necessary parties to the suit. The oil and gas lease covers 160 acres of land in Midland County and was executed by the Trust, as lessor, to appellant's predecessors in title, as lessees, in 1951. In 1954, the Trust conveyed the minerals under such lands to appellee's predecessors in title with certain reservations of perpetual and term royalties. Title in fee to the surface estate remained in the Trust, and appellant urges that cancellation of the lease in question would cause the fixtures and equipment left on the lease premises to vest in the Trust, instead of appellee as held by the trial court; hence the Trust was a necessary party. We think that the appellee, by the terms of its purchase from the Trust, acquired all of the rights to claim such fixtures which the Trust possessed. Among other things enumerated by the instruments of conveyance, it was provided, under a paragraph relating to lands subject to an existing oil and gas lease, that appellee acquired: " * * * and other mineral interests of whatever character, including choses in action, possibilities of reverter, rights of entry for condition broken and other reversionary interests of assignors arising out of or created by each of said leases * * *" The instruments of title relied on by appellee Texaco established as a matter of law that it acquired such rights as the Trust held in regard to the fixtures and equipment in the event of termination of the oil and gas lease. We are further of the opinion that the reservation of the non-participating royalties by the Trust did not make it a necessary party to this suit. The reserved royalty interests continued whether this oil and gas lease was canceled or not. This court held, in Magnolia Petroleum Co. v. Storm, 239 S.W.2d 437 (err. ref., n. r. e.), that owners of nonparticipating royalties whose interests were perpetual were not necessary parties to a suit to cancel an oil and gas lease. Naturally, each such case must depend on the nature of the estate reserved. One of the reservations before us is for a term of 25 years, and another is perpetual, but neither is dependent on the present lease for its tenure or nature of the estate owned. The incidents of ownership of these royalty interests are not fixed or controlled by the existing oil and gas lease. The owners thereof share in the production under this lease the same as they would under any other lease which might be made on these lands. Their interest not being affected by the cancellation of the existing lease, they are not necessary parties. "Necessary parties" has been defined as:

"[1] Necessary parties to a suit are those who have or claim a direct interest in the object and subject matter of the suit and whose interest will necessarily be affected by any judgment rendered therein. Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472; Cook v. Pollard, 70 Tex. 723, 8 S.W. 512.

"[2] The term 'necessary parties' has also been defined as 'persons who have such an interest in the controversy that a final judgment or decree cannot be made without either affecting their interests or leaving the controversy in such a condition that its final adjudication may be wholly inconsistent with equity and good conscience.' 67 C.J.S. Parties § 1, p. 890. This definition has also been accepted and applied in this jurisdiction. Fischer v. Rio Tire Co., Tex.Com.App., 65 S.W.2d 751; Simmons v. Wilson, Tex.Civ.App., 216 S.W.2d 847; Jones v. English, Tex.Civ.App., 235 S.W.2d 238, Wr. Dism."

Royal Petroleum Corporation v. Dennis, 160 Tex. 392, 332 S.W.2d 313 (1960).

Pertinent portions of the oil and gas lease involved are paragraph 3, containing the habendum clause, and paragraph 7, containing the "cessation" or "drilling and reworking" clause.

"3. This lease shall remain in force, unless terminated as hereinafter provided, for the term of five years (hereinafter

called the 'primary term'), and so long thereafter as oil, gas, casinghead gas, casinghead gasoline, or any of them, is produced hereunder in paying quantities."

"7. * * * if after the discovery of oil or gas in paying quantities the production thereof should cease from any cause, this lease shall not terminate if the lessee commences additional drilling or reworking operations within thirty days thereafter * * *"

The lease is dated October 23, 1951, and during the primary term oil was discovered and produced in paying quantities from two wells, and such production continued beyond the five-year primary term. By answers to requested admissions it is established that they produced until December 12, 1962, at which time there was a cessation of all production; that thereafter there was no production during all of the year 1963, and the lessee failed to commence additional drilling or reworking operations within 30 days after December 12, 1962, nor during the whole of the year 1963. The trial court held that the lease had terminated and the lessee-defendant's title reverted to the lessor-plaintiff as of January 12, 1963, as a matter of law. With that holding we agree. But lessee asserts that such holding is wrong because the lessor estopped itself from asserting termination by its act of challenging lessee's title. Lessor wrote to Lessee on July 6, 1962, stating that it had come into ownership of the working interest, and:

"Since the primary term of this lease has long since expired and as our production records show that for some time the lease has failed to produce in paying quantities, we feel justified at this time in requesting a release of the acreage from you.

"I will appreciate hearing from you concerning this matter as soon as practical."

Lessee made no reply, and on August 14th lessor wrote a follow-up letter enclosing a copy of its letter of July 6th. Lessee then replied that it did not agree with the contention of the letter of July 6th and asked for their continued cooperation in the operation of the lease. There was no further correspondence about the matter and, following a gradual decline of production, all production ceased on December 12th. The rule of estoppel relied on here by lessee is stated in Kothmann v. Boley, 158 Tex. 56, 308 S.W.2d 1 (1957):

"Lessors who thus wrongfully repudiate the lessees' title by unqualified notice that the leases are forfeited or have terminated cannot complain if the latter suspend operations under the contract pending a determination of the controversy and will not be allowed to profit by their own wrong. See Adams v. Cannan, Tex.Civ.App., 253 S.W.2d 948 (wr. ref.); Wisdom v. Minchen, Tex.Civ. App., 154 S.W.2d 330 (wr. ref. w. m.); Wheelock v. Batte, Tex.Civ.App., 225 S.W.2d 591 (wr. ref. n. r. e.); Morgan v. Houston Oil Co., Tex.Civ.App., 84 S. W.2d 312 (no writ); and Shell Oil Co. v. Goodroe, Tex.Civ.App., 197 S.W.2d 395 (wr. ref. n. r. e.)."

This brief statement of the rule does not shed much light on what constitutes repudiation, but from a reading of the cited cases, we have concluded that what was done in the instant case does not bring it within the rule. The letter of July 6th did not assert that the lease was canceled or forfeited, nor did it demand a release. Although we have spoken of the parties as "lessor" and "lessee", each was such as a successor in interest of the original lessor and lessee, and in this connection it should be noted that the appellee here had owned the lessor-interest a relatively short time when it made the statement that according to its production records the lease was not producing in paying quantities. By the terms of the lease, lessee had the obligation to maintain production in paying quantities,

or commence further operations, to keep the lease alive—maintain its determinable fee title. In the sense that forfeitures are abhorred by equity, this was not a forfeiture, for the parties had contracted that the lease would terminate upon certain conditions, and those conditions came to pass. When such an instrument is placed of record and thereafter terminates by its own terms, something must be placed of record to show the termination, otherwise it is forever a cloud on the title. Lessor did the normal thing here in requesting a release, and we do not think the fact that they gave as a reason therefor—that their production records showed a lack of production in paying quantities—should be construed as amounting to a repudiation of the lessee's title. We hold that as a matter of law, what transpired here was not such a repudiation of the lessee's title as to estop the lessor from complaining of the suspension of operations. Adams v. Cannan (supra); Steeple Oil & Gas Corp. v. Amend, Tex.Civ.App., 337 S.W.2d 809 (err. ref., n. r. e.).

■ Following the cessation of production in December, 1962, the equipment was left intact on the two wells on the lease in question, and negotiations were carried on to unitize leases in the area for secondary recovery by water-flooding. Both parties to this suit participated in those negotiations and entered into the unitization agreement with other operators in that portion of the Spraberry field. In committing this lease to the unit, Texaco expressly reserved its claim that the lease in question had terminated and that it did not recognize any interest or title in Sunray. Through the unitization, production was restored to the two wells in January 1964. Appellant urges that this was a temporary cessation of production, and that it used reasonable diligence in restoring production so that the lease should not be held to have terminated. Without going into the many instances in which the courts have recognized that the production required to keep the lease in effect after the expiration of the primary term cannot be continuous, since breakdowns in equipment, reworking operations, and other things are bound to occur and cause a temporary cessation of production, suffice it to say that this cannot be characterized as such a temporary cessation situation. The record reflects that there was a gradual decline of production, a depletion to the extent that primary recovery methods were of no avail, and that all production ceased as of December 12, 1962. Also, the terms of the lease prevent the application of the temporary cessation doctrine in this case. The above quoted habendum clause being expressly subject to the thirty-day drilling or reworking clause, all production having ceased, and no drilling or reworking operation having been commenced within the thirty-day period, the lease terminated. Adams v. Cannan, Tex. Civ.App., 253 S.W.2d 948, err. ref., n. r. e.; Woodson Oil Company v. Pruett, Tex.Civ. App., 281 S.W.2d 159, err. ref., Haby v. Stanolind Oil and Gas Company, 5 Cir., 228 F.2d 298; Wainwright v. Wainwright, Tex. Civ.App., 359 S.W.2d 628, err. ref., n. r. e.

Appellant urges that the trial court erred in canceling the lease because prior to the cessation of production, and thereafter, appellant was engaged in negotiations to restore production by secondary methods; that more than negotiations were involved, for the wells were kept in condition to again produce; they were, in fact, placed in the unitization plan, and production was again established under the unitization. In all of this, appellant says that it was doing what a reasonably prudent operator would have done under the circumstances. Regrettably, from appellant's standpoint, secondary recovery methods to unlock the vast reserves of the Spraberry came too late. Appellant's obligation under the oil and gas lease contract was to maintain production and, when production failed after the primary term, to commence "drilling or reworking operations" within thirty days. Whether a reasonably prudent operator would have used

secondary recovery methods to maintain production, or whether such an operator would have elected to work toward that end in lieu of further drilling or reworking operations, is beside the point. The point is that appellant owned under a determinable fee title, and it could only forestall the end to its title by commencing drilling or reworking operations. In our opinion, it did not meet the terms of its grant to effect this. Appellant admits the fact that all production ceased on December 12, 1962. The thirty-day period then began to run. The unitization agreement was entered into on October 23, 1963, and provided that it would become effective as of January 4, 1964. Appellant also admits that it did not commence additional drilling or reworking operations during the remainder of 1962 or during the year 1963. On the basis of these admissions, and the fact that the negotiations and entry into the unitization program can in no wise amount to "drilling or reworking", nor take the place of such requirement, no fact question exists but that the lease terminated by its own terms. Gulf Oil Corporation v. Reid, 161 Tex. 51, 337 S.W.2d 267; Francis v. Pritchett, Tex.Civ. App., 278 S.W.2d 288, err. ref.; Hickey v. Spangler, Tex.Civ.App., 358 S.W.2d 216, err. ref., n. r. e.; Hall v. McWilliams, Tex. Civ.App., 404 S.W.2d 606, err. ref., n. r. e.

Appellant eloquently argues that it should not lose title to the fixtures and equipment placed on the lease by reasons of its failure to remove same, and that it should have a reasonable time in which to effect such removal. Numerous cases can be cited where leases are silent as to the period of removal or provide for removal after termination, and the courts have allowed "a reasonable time". An implied covenant can be said to exist in such instances. Here, there can be no implied covenant, for there is an express provision in the lease contract that the right of removal exists "at any time during the term of this lease". When express covenants appear in a lease, implied covenants disappear. Magnolia Petroleum Co. v. Page, Tex.Civ.App.,

141 S.W.2d 691, err. ref. Appellant is bound by the terms of its contract.

All points of error have been considered, all are overruled, and the judgment of the trial court is affirmed.