Louis F. LABBE et al., Appellants,

v.

F. William CARR, Appellee.

No. 3925.

Court of Civil Appeals of Texas.

Eastland.

Nov. 27, 1964.

Rehearing Denied Jan. 8, 1965.

Sidney P. Chandler, Corpus Christi, for appellants.

Head & James, Gerald W. James, Corpus Christi, for appellee.

COLLINGS, Justice.

F. William Carr brought this suit on August 14, 1961, against Louis F. Labbe, Adolph E. Labbe and Emile C. Labbe. Plaintiff alleged that he was owner and operator of a leasehold estate existing by virtue of an oil and gas lease on certain described land in Duval County dated September 24, 1945, and on that date executed and delivered by Julia Labbe Nolan and others, individually and as agent of the State of Texas, lessor, to John T. Turnham as lessee; that Turnham assigned said lease to plaintiff on May 16, 1952. Plaintiff further alleged that a commercial oil well was drilled on the lease before he acquired it and that he has ever since, except as hindered and prevented by defendants, been producing oil therefrom under the terms of said lease, and as required thereby. Plaintiff alleged that defendants denied his ownership of said lease and the oil well and oil produced thereon and claimed ownership of same for themselves; that defendants have interfered with and interrupted the operation of said lease and well in numerous ways, including threats of physical violence, claiming that the lease has terminated as to plaintiff. Plaintiff sought injunctive relief praying that defendants be temporarily and permanently enjoined from in any manner interfering with plaintiff's right of possession of said lease, well and oil produced therefrom.

Defendants answered by a general denial and further stated that plaintiff's allegation that he was the owner and operator of the lease is false; that plaintiff failed to drill and operate the lease as required, and abandoned the lease and well more than four months before the filing of this suit; that after such abandonment defendants operated said well and lease and had to spend approximately $1,000.00 on

the repair of equipment thereon; that plaintiff on April 11, 1961 notified appellant Emile C. Labbe that he, Carr, would not continue to operate the lease and directed appellants, if they desired, to make needed repairs on equipment on the well and operate the lease themselves; that appellants did make such needed repairs and produced oil from the well.

This is the third appeal of this case. The first appeal was from a temporary injunction granted by the court which was affirmed in Labbe v. Carr, 352 S.W.2d 860, Texas Civil Appeals, San Antonio, (Writ Ref. N.R.E.). Thereafter the trial court granted plaintiff Carr's motion for summary judgment based solely upon the pleadings. On the second appeal that judgment was reversed and remanded in Labbe v. Carr, 369 S.W.2d 952, Texas Civil Appeals, San Antonio, (Writ Ref. N.R.E.). Additional pleadings were filed and upon another trial before a jury the court at the close of the evidence took the case from the jury and rendered judgment for Carr on all issues in the case except for an award to the defendants in the sum of $915.00. The defendants have appealed.

The record on this appeal shows that the land involved is school land and that the original lease upon which appellee Carr's ownership in the leasehold estate rests was executed on September 24, 1945 pursuant to the relinquishment act, Articles 5367 et seq. by members of the Labbe family, individually and as agents of the State of Texas, lessor, to John T. Turnham as lessee. Appellants state that they do not question the validity of this original lease and are not trying to have it declared invalid. The record further shows that Turnham on May 16, 1952 assigned the lease to appellee F. William Carr. It is undisputed that prior to the time of such assignment a commercial oil well had been drilled on said lease and said well has at all times since been producing oil in compliance with the requirements of the original lease.

In several points appellants question the validity of the assignment to Carr and his right to claim thereunder. Appellants urge that the court erred in rendering judgment for appellee because the land involved is State land and since the assignment of May 16, 1952 from Turnham to appellee was not filed in the State Land Office within sixty days after the date thereof as required by Article 5349, Vernon's Ann.Tex.Civ.St., such assignment became void. We overrule this point. Article 5349 is not here applicable. The lease and the transfer in this case were pursuant to the Texas Relinquishment Act, Articles 5367 et seq., and those articles do not provide for the filing of assignments in the General Land Office. Hill v. Provine, Tex. Civ.App., 260 S.W. 681.

The assignment from John T. Turnham to F. William Carr contained the following provision:

"Notwithstanding any other provision in this assignment to the contrary, should assignee fail to begin or cause to be begun operations for the drilling of a well upon the above described lands within sixty days from the date hereof and prosecute the drilling of same with reasonable diligence to the depth of 3,000 feet, unless oil or gas is found in paying quantities at a lesser depth, this assignment shall terminate as to all parties, and the interest herein assigned shall revest in assignor."

Appellants contend that the court erred in entering judgment for appellee because appellee failed to show that he began operations for the drilling of a well upon the land in question within sixty days from the date of the assignment as required therein; that appellee failed to show that he procured production of oil or gas in paying quantities within one year from the date of the assignment as required therein and that, in any event, there are questions of fact for the jury to decide as to whether appellee fulfilled the conditions of the as-

signment of the lease to him. These points are overruled. The assignment was from John T. Turnham to appellee Carr and the breach of a provision, if any, of the assignment which under its terms would result in a termination of or the right to terminate appellee's interest therein was personal between Turnham and appellee. Appellants have no right under the original lease, or under the assignment entitling them to bring an action for the termination of appellee's rights under the assignment. As already noted appellants state that they do not question the validity of the original lease but are attacking only appellee's rights under the assignment from Turnham.

■ Appellants further contend that the court erred in entering judgment for appellee, asserting that this is in truth and fact a suit in trespass to try title and that appellee's right to judgment must rest solely on the strength of his own title; that appellee failed to make proof of his title to the leasehold interest in question and that the court erred in granting him judgment. This is a suit for an injunction against a trespasser and not one in trespass to try title. The case was tried on that theory. The technical rules of pleading, proof and procedure applicable to suits in trespass to try title are therefore not applicable. The effect of what appellants seek to accomplish is to show appellee's lack of title to the lease by a cancellation of the assignment, and to place the burden on appellee to show good standing and present title under the assignment. Appellants were not parties to the assignment and have no right to seek its cancellation or to require appellee to show his rights thereunder as a prerequisite to the injunctive relief here sought. As previously noted appellants do not question the validity of the original lease. It is admitted that a commercial well was drilled on the lease and has at all times since been a commercial producer. It is undisputed that the lease was assigned by the lessee to appellee. The questions of whether appellee failed to show that he filed the assignment in the land office, and failed to begin operations for drilling or to procure production of oil or gas in paying quantities from such additional operations within one year from the date of the assignment and to otherwise fulfill the conditions of the assignment are therefore not here material.

■ Even if this should be held to be a suit in trespass to try title, appellee's title is established by the showing of his prior possession. The record is undisputed that appellee was in peaceable possession of the leasehold in question until appellants forceably assumed possession thereof. Appellants have not shown a title which is superior to that of appellee. Reiter v. Coastal States Gas Producing Company, (Sup.Ct.), 382 S.W.2d 243.

■ Appellants further contend that in any event there are questions of fact as to whether appellee, acting through his agent, abandoned the operation of the well in question and surrendered said well to appellants on or about April 11, 1961, and that the court erred in not submitting such issues to the jury.

The record shows that appellee F. William Carr had operated the lease and well in question continuously from 1952 to April 11, 1961 and had during that entire period employed appellant Emile C. Labbe to care for and see after such lease and well. As previously indicated it is undisputed that prior to the assignment of the lease to appellee a commercial oil well had been drilled on the lease and that the well has at all times since been producing oil in compliance with the requirements of the original lease. The operation of the well was normal until about April 12, 1961, at which time Charles Boyce, an employee of appellee, had a telephone conversation with Louis Labbe in which Labbe informed Boyce that the well had been off and was not producing and that Boyce stated to Labbe "Well, we will get it fixed like always"; that Louis Labbe thereupon informed Boyce that the Labbes were going

to take the well over; that Boyce said "Well, you may have some legal claim, I don't know, I'm not a lawyer, but I assume that we shall take it to a court of law"; that Labbe then told Boyce "Well, you can't come on the land, you will be trespassing." Boyce admitted that to the best of his knowledge he got in touch with National Supply Company and told them that there might be a pump repair on the lease in question but to hold it up because he didn't know whether they wanted to pay for it or not. He stated that he told the supply company to either hold up the repairing, or hold it until he found out what was going on; that he had gotten a telephone call telling him that he was not supposed to go on the lease; that they retained an attorney, and that it was a "wait and see" situation, but that he didn't tell anybody to stop all work on the lease. Boyce particularly denied that he told the Labbes that if they wanted to pay the bill for the repair of the pump that they could do so and operate the well. Boyce stated that a check was issued to O.K. Well Service to pay the bill for pulling the pump but that payment was stopped on the check; that the pump was repaired and the bill was paid by Labbe Brothers. Boyce indicated that between April 12, 1961, and the date this suit was filed on August 14, 1961, neither Boyce, Carr or anybody for Carr went back on the lease; that Boyce believed it was the latter part of July, 1961 before any of the Carr employees attempted to go back on the lease; that they adopted a "wait and see" attitude; that they continued to receive their share of the money for production from the well, and as long as they received this money they did nothing because they were afraid to go back on the lease since Louis Labbe had suggested that if they did they might be shot and they were afraid that the threat would be carried out.

The record further shows that appellant Emile C. Labbe remained on appellee's pay roll until June 1, 1961 and never actually advised appellee that he elected to terminate his employment, but Labbe did say that he sent the June 1st salary check back to appellants because "we made an agreement with the Carr office" that we would take over the well and pay all expenses. The record also indicates that on or about May 18, 1961, the Labbes made application to the Railroad Commission to change the name of the well and to place the lease in the name of the Labbes.

The record shows that appellant Louis Labbe admitted that in March or April of 1961, he had a telephone conversation with Mr. Boyce and stated to him, in effect, that the well in question was the property of Labbe Brothers; that he Louis Labbe considered that the lease held by Carr was void and that he so advised Boyce; that no lawyer had advised him that the lease was void or terminated, but that he had read the lease and talked about the matter with his brothers and that they had decided that the lease was void; that he felt that the lease had terminated back in May, 1953, the year after the assignment of the lease was made, for failure to comply with the terms of the assignment. Louis Labbe admitted that in his telephone conversation with Boyce he had indicated that Boyce or any one working for Carr would be treated as trespassers if they came upon the lease.

When appellee's receipt of proceeds from production on the well in question was interrupted in July of 1961 and appellee learned of such interruption he employed a contract gauger to go upon the lease to perform such service and such contractor and his employees continued to perform that service on the lease and well until on or about August 7, 1961, when the contractor's employee, Will Brown, was threatened by appellants with a shotgun if he came back on the lease. After this threat of violence suit was filed on August 14, 1961 for an injunction to restrain appellants from interfering with appellee's receipt of proceeds from production on said lease.

Contrary to appellants' contention, we hold that the evidence introduced in the trial does not raise a fact issue on the question of abandonment. It is held that to constitute abandonment of an oil and gas lease there must be both intention to abandon and actual relinquishment of the enterprise. Whelan v. Shell Oil Company, Tex. Civ.App., 212 S.W.2d 991, (Writ Ref.). Although the evidence may indicate a suspension of operation of the lease it, does not show an intention to abandon, but that any suspension of operation was brought about by the hostile action of appellants, one of whom was appellee's employee on the lease. It is undisputed that appellee was in peaceful possession of and operated the lease without opposition or question from any source,,producing oil from the well thereon from 1952 until the spring and summer of 1961 when appellants asserted ownership of the lease and well and started a course of interference with appellee's possession, operation of the lease and enjoyment thereof, and actually threatened physical violence to appellees' representative on the lease.. It is held that the fact that a lessee suspends development on a lease until the lessor recedes from an unwarranted position is no ground for striking down the lease unless an intention on the part of the lessee to abandon is shown. Of course appellants are not lessors of the leasehold estate involved, nor are they assignors thereof to appellee, but they seek to enforce rights which belong only to the lessor or to appellee's assignor. 42 Tex. Jur.2d 552; Lane v. Urbahn, Tex.Civ.App., 265 S.W. 1063, (Dis. W.O.J.). Kothmann v. Boley, 158 Tex. 56, 308 S.W.2d 1; Adams v. Cannan, Tex.Civ.App., 253 S.W. 2d 948; Wheelock v. Batte, Tex.Civ.App., 225 S.W.2d 591; Morgan v. Houston Oil Company, Tex.Civ.App., 84 S.W.2d 312; Shell Oil Company v. Goodroe, 197 S.W.2d 395. See also Mitchell v. Brockenbush, Tex. Civ.App., 363 S.W.2d 166, (Ref. N.R.E.). In the last cited case Wisdom v. Minchen, Tex.Civ.App., 154 S.W.2d 330, (Writ Ref.), is cited and quoted from as follows:

"In Morgan v. Houston Oil Company, Tex.Civ.App., 84 S.W.2d 312, 314, it was held: 'It is well settled that when a lessor determines to forfeit or cancel an oil and gas lease, and puts the lessee on notice thereof, he cannot complain if the latter suspends operations under the contract, pending the determination of the asserted right of the lessor to forfeit or cancel. (cases cited)'. The owners of the working interest were not bound therefore to continue after such notice of forfeiture to develop the lease, and the lease will not be held to have expired because they did not continue such development."

In 42 Tex.Jur.2d page 551 it is stated:

"An intention to abandon may be evidenced by any act legally sufficient to vest or divest ownership. Thus, the length of time during which operations have been suspended, the acts of the lessor, and the acts and intentions of the lessee are all material facts to be considered in determining whether or not the lessee has abandoned the leasehold. However, the question as to whether a lessee intended to abandon his lease is to be determined primarily from his conduct, independently of what he claims his mental attitude to have been."

Appellants' points of error are all overruled. The judgment is affirmed.