**Delton CADDELL and wife, Wanda Ruth Caddell, Appellants,**

v.

**THRESHOLD DEVELOPMENT COMPANY, Appellees.**

**No. 9204.**

Court of Civil Appeals of Texas, Amarillo.

Dec. 10, 1980.

Wicks & Lee, William E. Lee, Ralls, for appellants.

McCleskey, Harriger, Brazill & Graf, Mike Worley, Lubbock, for appellees.

REYNOLDS, Chief Justice.

The trial court summarily decreed the extension of the primary term of an oil, gas and mineral lease for the commencement of drilling operations. Concluding that the movant established entitlement to the summary judgment by operation of the force majeure provision in the lease, we affirm.

The facts are undisputed. On 20 June 1974, Delton Caddell and his wife granted an oil, gas and mineral lease to Gulf Oil Corporation covering the Caddells' property situated in Crosby County and described as the West One-half (W/2) of Section 812, T. T. Ry. Co. Survey. The lease, granted for a primary term of five years to expire on 20 June 1979, provides that the lease shall terminate on its anniversary date unless drilling or mining operations are commenced, or a rental to defer such operations is paid, prior to each anniversary during the primary term. A force majeure provision in the lease is worded thusly:

> 11. *Force Majeure. Lessee* [Gulf Oil Corporation] shall not be liable for any delays in its performance of any covenant or condition hereunder, express or implied, or for total or partial nonperformance thereof, due to force majeure. The term "force majeure", as used herein, shall mean any circumstance or any condition beyond the control of *Lessee,* including but not limited to acts of God and actions of the elements; acts of the public enemy; strikes; lockouts; accidents; laws, acts, rules, regulations and orders of federal, state or municipal governments, or officers or agents thereof; failure of transportation; or the exhaustion, unavailability, or delays in delivery, of any product, labor, service or material. If *Lessee* is required to cease drilling or reworking or producing operations on the leased premises by force majeure, then until such time as such force majeure is terminated and for a period of ninety (90) days after such termination, each and every provision of this lease that might operate to terminate it shall be suspended and this lease shall continue in full force and effect during such suspension period. If any period of suspension occurs during the primary term, the time thereof shall be added to such term.

In lieu of drilling or mining operations, annual rentals were timely paid to continue the lease in effect through its primary term ending 20 June 1979. Meanwhile on 1 June 1978, Gulf entered into a farmout agreement with Threshold Development Company whereby Threshold would conduct drilling operations under the lease.

Threshold staked an area for drilling and contacted Delton Caddell, who knew of the staking, on 15 June 1979 concerning its intentions to start drilling operations under the lease. The parties had several meetings which ended with Caddell's insistence on an advance payment of $10,000 for property damages and proof of Threshold's authority to drill.

Anticipating from their discussions that Caddell would hinder its drilling operations, Threshold filed suit on 18 June 1979, two days before the expiration of the primary term of the lease, seeking a temporary restraining order to prevent the Caddells from interfering with its drilling operations. On the same day, the court granted the restraining order and citation was issued to be served. Although Delton Caddell was not served until 20 June 1979, he admittedly knew the previous morning of the lawsuit's filing.

On 19 June 1980, the day before the primary term of the lease was to expire, Threshold prepared to go upon the leased property to commence drilling. Being notified, Delton Caddell, accompanied by his son, each of whom carried a firearm, met his armed employee at the site. Once there, Caddell was informed by Threshold's agent that he had court papers to allow entrance onto the property. At that time, Caddell told the agent that "if he went on that property he was going to need an undertaker to get off." Threshold did not go onto the property.

The next day, the last day of the primary term, Caddell was served with the restraining order. On the same day, Threshold filed its first supplemental petition, reciting the June 19 incident and further seeking a declaration of its rights under the lease. On 2 July 1979 after a bench hearing, the trial court signed an agreed order decreeing that neither the Caddells nor Threshold "shall drill or commence any operations which are calculated to ultimately produce oil or gas on the Caddell property" until further order of the court.

Thereafter on 27 August 1979, Threshold moved, with supporting documents, for summary judgment perpetuating the lease and judgment declaring its rights under the lease. The ground of the motion was, in brief, that Delton Caddell's unlawful interference with Threshold's rights under the lease and farmout agreement caused the primary term of the lease to be extended and perpetuated for a reasonable time during which Threshold had the right to conduct drilling and exploration activities pursuant to the lease.

The Caddells filed no answer to Threshold's motion for summary judgment. However, on 5 October 1979, they answered Threshold's supplemental petition, admitting that Threshold had a right to enter the property and was prevented from doing so by the actions of Delton Caddell.

On 1 November 1979, the trial court rendered a summary judgment on Threshold's motion. The judgment decreed the extension and perpetuation of the primary term of the lease for ninety (90) days, beginning on the day the judgment becomes final, for Threshold to commence drilling operations.

■ Appealing, the Caddells submit five point-of-error reasons to avoid Threshold's entitlement to summary judgment. Three of the reasons, expressed under points two, four and five, may not be entertained. Two of them are issues of fact and one of them is an issue of defect of parties which, absent any response by the Caddells to Threshold's motion for summary judgment, were not presented to the trial court to avoid the summary judgment. *Toler v. Harbour*, 589 S.W.2d 529, 531 (Tex.Civ.App. —Amarillo 1979, writ ref'd n. r. e.). By the explicit directions of Rule 166–A, Texas Rules of Civil Procedure, any issue not expressly presented to avoid the movant's entitlement to summary judgment shall not be considered on appeal. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678–79 (Tex.1979).

Resultingly, on appeal the Caddells may contend only that the ground Threshold expressly presented to the trial court is insufficient as a matter of law to support the summary judgment. *Id.* at 678; Tex.R. Civ.P. 166–A. Their points one and three, considered in the light of *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112, 114 (Tex.1976), are adequate to present this contention.

■ Conceding that Delton Caddell's actions triggered the operation of the force majeure provision, the Caddells first contend that there is no provision in law for the court to extend the primary term of a lease when the lessor was not responsible for the litigation giving rise to the extension. A brief, but sufficient, answer is that the operator of a leasehold estate existing by virtue of an oil and gas lease has the right to initiate litigation to enforce the terms of the lease. *Labbe v. Carr*, 385 S.W.2d 592 (Tex.Civ.App.—Eastland 1964, writ ref'd n. r. e.).

■ Given the invocation of force majeure, the Caddells next contend that service of the restraining order terminated such force majeure and, contractually, the lease could not continue in effect for more than ninety days thereafter, i. e., not past 20 September 1979. Therefore, they argue, the court was powerless to improvise for the parties a new contract which extends and perpetuates the primary term for a period of ninety days past the date the summary judgment becomes final. We are not persuaded to these views.

Delton Caddell's actions constituted a "lockout" within the meaning of the force majeure provision, thereby preventing the expiration of the primary term of the lease on 20 June 1979. By the undisputed facts, Delton Caddell's actions, for which he offered no legal justification, were the wrongful assertion of a right the Caddells did not have. They, therefore, cannot complain if Threshold suspended operations under the lease and resorted to the court for a determination of the controversy. *Kothmann v. Boley*, 158 Tex. 56, 308 S.W.2d 1, 4 (1958). Once timely resort to the judicial process resulted in an agreed order to hold matters in abeyance until the further order of the court, then the unambiguous terms of the force majeure provision continued

the lease in full force and effect for a period of ninety days after such force majeure was terminated as evinced by the finality of the judgment settling the controversy in Threshold's favor. The circumstances and conditions effecting the continuation of the primary term and the duration thereof were expressly stipulated by the parties in the lease, and the court's summary judgment merely decreed enforcement thereof. *Wisdom v. Minchen*, 154 S.W.2d 330, 335–36 (Tex.Civ.App.—Galveston 1941, writ ref'd w. o. m.). To decree otherwise would be to permit the Caddells to profit by their own wrong, which the law does not allow. *Kothmann v. Boley, supra,* at 4.

Accordingly, Threshold established its entitlement to summary judgment on the ground it expressly presented. Points one and three are overruled.

The summary judgment is affirmed.