**STEEPLE OIL & GAS CORP. et al.,
Appellants,**

v.

**J. D. AMEND, Appellee.**

No. 6881.

Court of Civil Appeals of Texas.

Amarillo.

Sept. 6, 1960.

Rehearing Denied Sept. 12, 1960.

Carrington, Johnson & Stephens, Dallas, for appellants.

Simpson, Adkins, Fullingim & Hankins, Amarillo, for appellee.

CHAPMAN, Justice.

This opinion is in lieu of our opinion announced herein on April 18, 1960.

In the court below all parties now before this court filed motions for summary judgment. Plaintiff below, J. D. Amend, asked for a summary judgment against Petroleum Exploration, Inc., Steeple Oil & Gas Corp., and Raymond A. Baur. Petroleum Ex-

ploration, Inc., has no present interest in the matter here involved and both appellants and appellee by their attorneys admit it is no longer a proper or necessary party to the phase of the case which was determined by the judgment appealed from. A summary judgment was granted for plaintiff below, J. D. Amend, against Steeple Oil and Gas Corp, and Raymond A. Baur. Summary judgment was denied appellants, the parties last named. The trial court severed the damages issue and rendered its judgment for J. D. Amend that the oil and gas lease in question terminated on August 10, 1958, for failure to produce and pay "shut-in" royalty for the period commencing August 10, 1958. From such judgment appellants have perfected their appeal upon four points of error, the first of which asserts error of the court below in holding "that the oil and gas lease terminated on August 10, 1958, for failure to produce or to pay 'shut-in' gas royalty by August 10, 1958, in that payment of such 'shut-in' royalty was not required to be made by August 10, 1958, proper tender of such 'shut-in' royalty being timely made and rejected on September 22, 1958."

The lease involved was executed April 10, 1957, for a primary term of six months, thus making such term end on October 9, 1957. A gas well was completed and capped prior to August 1, 1957, well within the primary term. There has been no production of either gas or oil from the premises in question at any time, though the well was capable of producing gas from two separate zones. The following permissive "shut-in" clause was included in the lease:

"Where gas from a gas well is not sold or used, lessee may pay as royalty $640.00 per well per year and while such payment is made, it will be considered that gas is being produced within the meaning of Paragraph 2 thereof."

Paragraph 2 provides:

"Subject to the other provisions herein contained, this lease shall be for a primary term of six months from this date (called "primary term") and as long thereafter as oil and gas are produced from said land and land with which said land is pooled hereunder."

On September 24, 1957, appellants paid appellee $640 "shut-in" royalty and simultaneously therewith furnished a receipt for appellee to file acknowledging such payment. Such receipt duly filed was introduced into the summary judgment evidence as a stipulation and is as follows:

"Received from Steeple Oil & Gas Corp. and Petroleum Exploration, Inc. the sum of $640.00 in currency for 'shut-in' royalty on the Steeple Oil & Gas Corp. and Petroleum Exploration, Inc. No. 1 J. D. Amend located in the North half (n/2) of Section 12, Block 3, GH&H Survey, Sherman County, Texas, *from August 9, 1957, to August 9, 1958.* (Emphasis added.)

"Date: 9–24–57      J. D. Amend"

During the oral arguments in this case and by brief, appellees contended that this law suit is controlled by a proper interpretation of Freeman et al. v. Magnolia Petroleum Co., 141 Tex. 274, 171 S.W.2d 339. Appellants took the position that the Freeman case does not support the trial court's judgment in the instant case, but if we understood counsels' oral argument, they all agreed the case of Gulf Oil Corp. v. Reid then pending in the Supreme Court of Texas would decide the case at bar. That case has now finally been disposed of and is reported in 337 S.W.2d 267, 270.

It is not necessary for us in this case to decide under the permissive "shut-in" clause whether the "shut-in" royalty must be paid before or at the time the "shut-in" is made, though the Supreme Court in the Reid case has said:

"Just as the provisions in this lease have been held to deny a reasonable time to find a market after discovery of oil, so they have been construed to de-

ny a reasonable time within which to pay 'shut-in' royalty after the 'shut-in' has taken place. This was explicitly held in Freeman v. Magnolia, supra, under similar facts, practically the only distinction being that in Freeman the discovery well had been brought in a few months prior to the end of the primary term."

We believe the question necessary to a decision in this case is whether the parties themselves may set an anniversary date for the payment of the "production" or "shut-in" after the "shut-in" has taken place. We have not been cited to any authority on the particular question here involved nor have we found any. One of the best known and most frequently quoted text writers on oil and gas, Mr. A. W. Walker, former Professor of Law at the University of Texas, in construing the Freeman case in an article in Texas Law Review, Vol. 25, pp. 23–24 said:

"It will be observed that the court was not required to determine whether the annual royalty should be paid in advance. However, since payment is merely a substitute for production, it is manifest that all annual payments made after the expiration of the primary term must be made in advance in order to preserve continuity in satisfaction of the habendum clause. Even during the primary term payment in advance would seem to be the proper cause to pursue.

"Since this clause will operate as a clause of special limitation after the expiration of the primary term, *it is essential that the correct anniversary date for payment should be initially established and scrupulously observed thereafter*. (Emphasis added.) And it is important to remember that this anniversary date may change from time to time. Since the royalty is payable annually in advance while gas is not being sold or used, it may be held that temporary and sporadic uses or sales of gas may result in the establishment of entirely new anniversary dates for payment, and the lessee must exercise constant caution to see that his books indicate such changes.

"There are many other unsettled problems that might be raised with regard to this clause. Where the clause is of the optional variety in that it provides merely that the lessee 'may' pay the stipulated royalty and thereby treat the capped gas well as producing within the meaning of the habendum clause, must the lessee commence the payment of these annual sums during the primary term as soon as the well is capped in order to obtain the benefit of this clause upon the expiration of the primary term, or may he wait until the end of the primary term before exercising his option to make such payments? It would appear to be cheap title insurance for a lessee to assume the possibility that the courts may hold that payments must be commenced as soon as the well is capped, and to continue these payments throughout the primary term."

■ The first $640 production payment was made on August 9, 1957, more than nine days after the "shut-in" had taken place and was accepted by appellee. Therefore, it is unnecessary in this case for us to decide if the "shut-in" or "production" payment must be made on or before the "shut-in" takes place, and we are not here passing upon that question. We believe the parties themselves set the anniversary date for the "production" payment by the instrument above quoted wherein such payment was made to extend "from August 9, 1957, to August 9, 1958." Accordingly, when the "production" payment was not tendered until September 22, 1958, more than a month after the anniversary date set by the quoted instrument, we believe appellee had the right to reject the payment and that the lease had lapsed.

In their second point, appellants assert estoppel for the reason that "plaintiff was asserting an unjustified attack on the leasehold rights created by such lease." The letters from appellee to appellants upon which they rely for this point are as follows:

"J. D. Amend
"312 First National Bank Building
"Amarillo, Texas

"December 4, 1957

"Petroleum Exploration, Inc.
"1501 Taylor Street
"Amarillo, Texas

"Gentlemen:

"Re: Contract and Agreement
dated April 10, 1957—
Oil and Gas Lease, Section
12, Block 3, GH&H Survey,
Sherman County, Texas.

"In accordance with the terms of the above contract, I would like to have you exceute a release on the rights pertaining to oil and gas as therein set out and forward to me in order that I may have same placed of record.

"If you have completed your drilling program, it would probably be just as well at this time to release all rights except the gas rights included and above the strata of the deepest well completed.

"A short time back I was paid $640.-00 for a shut-in-gas well. This is a dual completion and is actually two wells being produced from one hole. The horizons and pressures are entirely different and there is no reasonable assumption whereby this could be considered as one well. Will you please designate the horizon you have made the payment of $640.00 as per our contract and agreement.

"I have been talking to some other people with regard to some oil development in the area and any delay will be detrimental to my prospective trade.

"Please give this matter your immediate attention.
"Yours very truly,
"J. D. Amend"
JDA:ls

"May 1, 1958

"Petroleum Exploration, Inc.
"1501 Taylor Street
"Amarillo, Texas

"Re: J. D. Amend Lease—Section 12,
Block 3, GH&H Survey, Sherman
County, Texas.

"Gentlemen:

"On December 4, 1957, I wrote you pointing out that you had made no effort to exercise your rights to develop the above properties for oil and requested that you give me a release as to the oil rights under the above land, but I have had no reply.

"You completed a gas well in July, 1957, which was completed as a dual producer, and secured such a designation from the Railroad Commission. You have attempted to pay shut-in royalties for only one well. Additionally, although a pipe line is nearby ready to accept and purchase gas from this lease, you have made no effort to produce or market gas from either of the two gas production zones.

"Accordingly, I do not feel that you have complied with the obligations you have under the terms of your lease. This letter is to renew my demands and to let you fully understand my position in the matter.
"Yours very truly,
"J. D. Amend"

We do not believe the tender of such letters are such as to "wrongfully repudiate the lessee's title by unqualified notice that the leases are forfeited or have terminated" within the holding of our Supreme Court in Kothmann v. Boley, 158 Tex. 56, 308 S.W.2d 1. To the contrary we believe the letters in the instant case

are more comparable to those of similar import in Adams v. Cannan, Tex.Civ.App., 253 S.W.2d 948, 951 (writ refused). In that case Justice Norvell said:

"We do not regard the letter received by appellees on June 27, 1950, as presenting a clear, unequivocal challenge to lessee's title which is an essential basis of the doctrine relied upon. Although a release of the oil and gas lease was requested and there was some evidence that Adams had considered leasing the property to the Texas Company, should he be successful in securing the release, the letter itself does not purport to be a firm declaration of a position or contention that Adams held title to the premises involved to the exclusion of all rights of the appellees."

Accordingly, we hold the letters did not present a clear, unequivocal challenge to lessee's title.

■ By their third point appellants seek to invoke the "60-days cease-to-produce-clause", which provided, "this lease shall not terminate if lessee commences additional drilling or reworking operations within 60 days after production ceases * * *" By stipulation in the record no oil, gas, or other minerals have ever been produced upon the lands in question though the well in controversy was capable of producing from two separate zones. Under these facts the authority of the Reid case heretofore cited foreclosed any rights of appellants claimed under this provision of the lease to prevent termination. The court there said, "Since there had been no production, there could not be a cessation of production, and thus the 60-day clause is not available to petitioner to extend the term of the lease or to delay the tender of the royalty payment." Accordingly, appellants' third point is overruled.

The fourth point is merely an assertion that the trial court erred in granting ap-

pellants' motion for summary judgment. What we have already said disposes of that contention.

The judgment of the trial court is affirmed.