

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00242-CV

---

TAYLOR PROPERTIES, APPELLANT

V.

SCOUT ENERGY MANAGEMENT, LLC, SCOUT ENERGY GROUP III, LP, SCOUT ENERGY PARTNERS III-A, LP, SCOUT ENERGY GROUP IV, LP, AND SCOUT ENERGY PARTNERS IV-A, LP, APPELLEES

---

On Appeal from the 69th District Court
Moore County, Texas
Trial Court No. 19-92, Honorable Kimberly Allen, Presiding

---

August 23, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

A mineral lease permits a lessee to maintain the lease by paying one $50 shut-in royalty payment each year the well is shut-in. What is the effect of a lessee making two such royalty payments within a month of each other during the first year of a two-year shut-in period? Is the second payment a prepayment for the entire second year even though the lessee specified in the check that it covered a much lesser period? Or do we ignore the specification and treat it as a prepayment for the upcoming year? That

conundrum underlies this appeal from a letter judgment refusing to declare the lease terminated. Taylor Properties (Taylor) is the lessor while Scout Energy Management, LLC, Scout Energy Group III, LP, Scout Energy Partners III-A, LP, Scout Energy Group IV, LP, and Scout Energy Partners IV-A, LP (hereinafter referred to as Scout) are the lessees. We reverse, given application of our binding precedent.

### *Background*

This appeal centers on the disputed interpretation of a shut-in royalty clause included in two leases covering the Gober 1R well on land described as Section 10, Block 1, J Poitevent Survey, Moore County, Texas. Those two leases, the Gober Lease and the Indian Territory Illuminating (ITI) Lease were consolidated in 1942 for purposes of development and production and have nearly identical terms. For purposes of the suit below and the pending appeal, they have been referred to as the Leases.

The Leases provide the following provision, commonly referred to as a shut-in royalty clause:

> [W]here gas from a well producing gas only is not sold or used, Lessee may pay as royalty $50.00 per well per year, and upon such payment it will be considered that gas is being produced within the meaning of [the habendum clause].

Actual production from the Gober 1R well ceased in September 2017, ostensibly due to a fire at a nearby natural gas processing facility. On September 6, 2017, ConocoPhillips paid to Taylor its portions of the shut-in royalty under each lease. On October 10, 2017, thirty-four days later, ConocoPhillips again paid Taylor its portions of the shut-in royalty due under the Leases. Having been assigned the rights under the lease in 2017, Scout paid shut-in royalty to Taylor on December 21, 2018. Actual production resumed in November 2019.

2

Taylor, as current lessor, took the position that the Leases terminated by their own terms in October 2018, one year after ConocoPhillips's second shut-in royalty payment. Scout, successor in interest as lessee under the Gober and ITI Leases, disagreed. It posited that ConocoPhillips's and Scout's own shut-in royalty payments, three in total, were timely under the clause and served as constructive production for at least a three-year period pursuant to the terms of the Leases.

Following a trial to the bench on stipulated facts, the trial court entered judgment that Taylor take-nothing by its suit in trespass to try title. By its findings of fact and conclusions of law, the trial court concluded that the shut-in royalty clause was ambiguous and concluded that Scout's proposed reading under which the Leases did not terminate was consistent with principles of contract construction and the intent of the contracting parties.

Taylor brings four issues to this court. By its first and second, it contends that the trial court erred in concluding that the shut-in royalty clause was ambiguous and Scout's interpretation of the shut-in royalty clause was proper. Taylor's third issue is presented as an issue contingent on our agreeing with the trial court that the clause is ambiguous. And, by its fourth and final issue, Taylor contends that the anniversary dates set by Scout and its predecessor-in-interest should control operation of the shut-in royalty clause. We address issues one, two, and four, our disposition of which pretermits consideration of issue three.

### *Analysis*

Again, the trial court concluded that the shut-in royalty provision was ambiguous. This was purportedly wrong. But, despite viewing the shut-in royalty clause as

ambiguous, it nevertheless concluded that 1) the second royalty payment of ConocoPhillips extended the shut-in royalty period for an additional twelve months and 2) Scout's payment of a third royalty on December 18, 2018, extended the period through the time by which production resumed. We disagree that the shut-in royalty clause is ambiguous.

Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). Being a question of law, we review the trial court's determination de novo. *See Bowden v. Phillips Petro. Co.*, 247 S.W.3d 690, 705 (Tex. 2008).

Next, conflicting interpretations alone do not establish ambiguity. *Milner v. Milner*, 361 S.W.3d 615, 620 (Tex. 2012); *Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). In other words, "[a] contract is not ambiguous merely because the parties disagree about its meaning." *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018). If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous. *Nettye Engler Energy, LP v. BlueStone Nat. Res. II, LLC*, 639 S.W.3d 682, 690 (Tex. 2022); *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (1951). The converse of this is also true: a contract is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. *Daniel*, 243 S.W.2d at 157. "Interpretation of a contract [also] involves questions of law we consider de novo*." Bluestone Nat. Res. II, LLC v. Randle*, 620 S.W.3d 380, 387 (Tex. 2021).

When called upon to interpret a contract, "[o]ur duty is to respect and enforce those terms by ascertaining the parties' intent as expressed within the lease's four corners." *Point Energy Partners Permian, LLC v. MRC Permian Co.*, No. 21-0461, 2023 Tex. LEXIS 343, at *15, 669 S.W.3d 796 (Tex. Apr. 21, 2023). To that end, we examine the entire lease, focusing on the plain language, considering the context in which words are used, and attempting to harmonize all the lease's parts to "determine, objectively, what an ordinary person using those words under the circumstances in which they are used would understand them to mean." *Id.*

Taylor focuses on the phrase "upon such payment" to support its reading that constructive production begins on the date the payment is made and ends one year later at which time—and only at that time else the lessee is losing part of its "per year" payment—another payment must be made to avoid termination of the lease. That is to say, Taylor reads that constructive production under the shut-in royalty clause to run one year from the time of the *most recent* payment made pursuant to that clause. In effect, Taylor would read the clause as providing, "upon such payment it will be considered that gas is being produced *for one year from the date of payment or until another payment is tendered*." However, the Leases do not say such and we are prohibited from adding to or revising the words the parties have chosen. *See Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.) (observing that, when interpreting a contract, "we may not rewrite the agreement to mean something it did not"). Further, such a reading runs afoul of general rules of contract construction.

Taylor's reading of the shut-in royalty clause rearranges the placement of the "per well per year" language of the clause, attempting to slightly alter its impact and diminish

5

its connection both in terms of syntactic proximity and semantic significance to the *payment* to be made to trigger constructive production. "[S]uch payment" refers to "$50.00 per well per year." "Upon" is typically used as a synonym for "on." More archaically, as may be appropriate given that the Leases were executed in the 1930s, it is synonymous with "thereafter." *Upon*, MERRIAM WEBSTERS COLLEGIATE DICTIONARY (11th ed. 2014). So, the more reasonable understanding given the plain language of the phrase and in light of contract construction principles is that "upon such payment" means the following: "After lessee pays $50.00 per well per year, the well will be considered producing for that year."

Moreover, the anniversary for tendering the next shut-in royalty payment is that which the parties may designate on the form of payment (e.g., check) or the receipt memorializing payment. *See Steeple Oil & Gas Corp. v. Amend*, 337 S.W.2d 809, 811 (Tex. Civ. App.—Amarillo 1960, writ ref'd n.r.e.) (noting that "the parties themselves set the anniversary date for the 'production' payment by the instrument above quoted [receipt for payment] wherein such payment was made to extend 'from August 9, 1957, to August 9, 1958'"); *see also Mayers v. Sanchez-O'Brien Minerals Corp.*, 670 S.W.2d 704, 708 (Tex. App.—San Antonio 1984, ref'd n.r.e.) (following *Amend* and concluding that the receipt and notation of the check tendered by appellees on August 10, 1978, set October 6, 1979, as the anniversary date for the subsequent shut-in royalty payment). And, that payment may be made in advance is both the more certain and safer course of action. As acknowledged in *Amend*, "since payment [of a shut-in royalty] is merely a substitute for production, it is manifest that all annual payments made after the expiration of the primary term must be made in advance in order to preserve continuity in satisfaction of

6

the habendum clause." *Amend*, 337 S.W.2d at 811 (quoting A. W. Walker, *Developments in the Law of Oil and Gas in Texas During the War Years -- A Resume*, 25 Texas L. Rev. 1, 23–24 (1946)). "Even during the primary term payment in advance would seem to be the proper cause to pursue." *Id.* That said, the September 2017 payment and receipt established the shut-in royalty anniversary date at bar, and the trial court found as much based on the stipulated record provided it.

Again, ConocoPhillips made two shut-in royalty payments. The receipt memorializing the first had written on it "9-06-17" under the heading "Mth Begin." Per *Amend* and *Mayers*, that set the starting date of the shut-in royalty period at September 6, 2017, and the anniversary date one year later, i.e., September 6, 2018.[1] The second payment came about a month later. Reading the receipt memorializing it, we encounter the date "10-09-2017" under the heading "Mth Begin." Therein lies the problem.

Applying *Amend* and *Mayers* obligates us to interpret the notation on the second receipt as ConocoPhillips's decision to establish a shut-in royalty period differing from that set by the September 6th payment. The new period was one month longer than the first. More importantly, the anniversaries of both lapsed before Scout tendered its shut-in royalty check in December 2018.

Scout did not plead that the notations in the second receipt were a mistake. Nor was that contention uttered in the stipulated record upon which the trial court acted. Other defenses such as reformation of the second receipt, unjust enrichments arising from two payments being made during one shut-in period, or the like, also went unmentioned. Nor did Scout cite us to authority holding that the initial shut-in period cannot be modified by

---

[1] The trial court found as much, as evinced by its calculating the period as commencing on September 6, 2017.

the lessee. Rather, it argued that the second payment merely extended by one year the original annual term set by the first payment. The trial court agreed and added that Taylor received what it bargained for, that is, two $50 payments to extend the shut-in period for two years.

We cannot deny that simply extending the initial term by one year may be the "fair" outcome, as suggested by the trial court. But, legal precedent controls, and nothing was said in the trial court's findings and conclusions about *Amend* or *Mayers*. Moreover, determining the shut-in period through simply dividing the amount of money the lessee sent by the shut-in royalty specified in the contract would blur an otherwise clear test *Amend* and *Mayers* formulated. So too would it blur the force and meaning of one's own words. For example, Scout's $200 December 2018 shut-in payment would mean that the designated period it intended to cover was four years. After all, the contractual royalty was just $50 per year; so, dividing $200 by 50 equals four years. Yet, Scout clearly stated that the payment covered a period from December 20, 2018, to December 20, 2019, that is, a period of only *one* year. So, should we heed what a mineral lessee says or merely opt to divide the payment sent by the contractual royalty amount in any given situation? Our answer follows.

We cannot ignore the legal admonishment urged by both parties. They tell us to heed the words incorporated into the writing. Those words control what they intended, and we cannot rewrite what was written. Admittedly, Scout endeavored to distinguish *Amend* and *Mayers*. Yet, it cited us to no authority vitiating either precedent's directive that the shut-in period described in the payment or receipt controls. We can either follow the expressed words by ConocoPhillips in the October 2017 receipt or ignore parties'

8

aforementioned admonishment to us. That admonishment, though, tracts legal authority. We are bound by that authority and the rule obligating us to enforce the words used in the writing. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022); *Point Energy Partners Permian, LLC*, 2023 Tex. LEXIS 343, at *15. So too are we bound by our own precedent, i.e., *Amend*. *See Mitschke*, 645 S.W.3d at 256–57.

Given the words written in the October 2017 receipt, *Amend*, and *Mayers*, the special limitation contemplated by the shut-in royalty clause occurred here. *See Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 554 S.W.3d 586, 606 (Tex. 2018) (describing such a clause as a special limitation the occurrence of which terminates the lease). The lease in question automatically ended when no one paid another royalty on or before October 9, 2018. Scout's December 2018 payment came too late. By holding otherwise, the trial court erred. We reverse its judgment and remand the cause for further proceedings consistent with this opinion.

Brian Quinn
Chief Justice

Doss, J., concurring in the result.

9