# Supreme Court of Texas

═══════════
No. 23-1014
═══════════

Scout Energy Management, LLC, Scout Energy Group III, LP,
Scout Energy Partners III-A, LP, Scout Energy Group IV, LP,
and Scout Energy Partners IV-A, LP,

*Petitioners*,

v.

Taylor Properties,

*Respondent*

═══════════════════════════════════════════

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

═══════════════════════════════════════════

**PER CURIAM**

When a well operating under a mineral lease ceases production, the lessee often may rely on a "shut-in royalty" savings clause to prevent the lease from terminating for nonproduction. The lease in this case has such a provision, permitting the lessee to pay a $50 royalty "per well per year" and providing that "upon such payment it will be considered that gas is being produced." The lessee here made a payment that was sufficient to maintain the lease for a year, then made another payment in the same amount a month later. The dispute is whether these two

payments secured two full years of constructive production from the date of the first payment or whether early payment of the subsequent year's royalty reset the deadline so that the lease terminated one year after that payment.

The court of appeals concluded that the lease unambiguously establishes that each payment under the savings clause provides a full year of constructive production; later payments could thus be made before the year expires without resetting the deadline for the next payment. But the court nonetheless concluded that the lessee's second payment *did* reset the deadline based on a notation appearing on the check receipt. While we agree with the court's interpretation of the lease, we disagree with its conclusion regarding the effect of the notation on the check receipt, so we reverse the court's judgment.

**I**

Taylor Properties owns land that is part of a gas-producing unit covered by two consolidated leases: the Gober Lease and the ITI Lease. Both leases contain a habendum clause stating that "this lease shall be for a [primary] term of ten years . . . and as long thereafter, as oil, gas or other mineral is produced from [the] land." Each lease also contains an identical "savings clause" providing as follows:

> [W]here gas from a well producing gas only is not sold or used, Lessee may pay as royalty $50.00 per well per year, and upon such payment it will be considered that gas is being produced within the meaning of [the habendum clause] . . . .

ConocoPhillips was a successor to the original lessee under both leases. When production from the only active well on the land covered by both leases ceased in September 2017, ConocoPhillips made two

2

separate payments to Taylor (one for each lease) under this savings clause.  The parties stipulate that these payments were sufficient to satisfy the "$50.00 per well" under the savings clause.  One month later, in October 2017, ConocoPhillips made two additional payments to Taylor (one for each lease) in the same amounts.  The receipts for the checks—each entitled "ConocoPhillips Company Shut-in Royalty Receipt"—reflect the name of the original lessor along with the lease's start date and number.  Each receipt also reflects that the respective check was in payment of the shut-in royalty and, of particular relevance to this dispute, bears a notation reading "Mth Begin," under which a date is listed.  A check receipt for the Gober Lease looks like this:

```
                                                              58 1946931  00510360  59
                    ConocoPhillips Company Shut-in Royalty Receipt
-------------------------------------------------------------------------------------
| Lease Date |Original Lessor                      |#Mth|Mth Begin |Lease Number     |
-------------------------------------------------------------------------------------
| 05-03-1937 |O E Gober Et al                      |000 |10-09-2017|903976001        |
-------------------------------------------------------------------------------------
AGENCY LEASE NUMBER:
IN PAYMENT OF: Shut-in Royalty              Business Unit: Midcon P A B
FOR: Gober 1R (A200203)

REMARKS:   Shut in payment for the temporary cessation of
           production from Gober 1R well, Property A200203
```

Scout Energy Group III, LP succeeded in ConocoPhillips's interest in the leases.  Scout Energy Management LLC made a payment to Taylor, purportedly under the savings clause, in December 2018.  But Taylor asserted that this payment was too late, and the leases had already terminated, because over one year had passed since ConocoPhillips's last payments for the respective leases in October 2017.

3

Taylor sued Scout[1] for trespass to try title and sought a declaration that the leases had terminated before Scout's December 2018 payment.

The case was tried to the bench, with the parties stipulating to many of the facts. In a motion for summary judgment, Taylor argued that the leases' language was "unambiguous and clear" as to "when the parties intended for the Leases to terminate"—one year after the last payment. Scout asserted in response that the "plain language" of the leases meant that each shut-in royalty payment would provide a full year of constructive production without resetting the initial payment's anniversary date. The trial court rendered judgment for Scout, while concluding that the savings-clause language in the leases *was* ambiguous. Specifically, it concluded that "upon such payment" could mean either (1) that the year of constructive production secured by each payment begins on the date of that payment or (2) that a shut-in royalty payment "compensate[s] for a twelve-month ('per year') period of no production" provided that it is paid before the lease terminates. The trial court concluded that the latter interpretation reflected the parties' intent, so Scout's December 2018 shut-in royalty payment was timely and the leases did not terminate.

Taylor appealed, and the court of appeals reversed and remanded. ___ S.W.3d ___, 2023 WL 5486220, at *4 (Tex. App.—Amarillo Aug. 23, 2023). Contrary to the trial court's holding, the court of appeals concluded that the leases were *un*ambiguous. *Id.* at *2. But it agreed

---

[1] Taylor's lawsuit named as defendants Scout Energy Management, LLC; Scout Energy Group III, LP; Scout Energy Partners III-A, LP; Scout Energy Group IV, LP; and Scout Energy Partners IV-A, LP. We refer to the defendants collectively as "Scout."

4

with the trial court's (and Scout's) construction of the savings clause—that each shut-in royalty payment entitled the lessee to a full year of constructive production and future years' payments could be made early without cutting short the year secured by the prior payment. *Id.* at *2-3.

Nonetheless, the court concluded that the leases terminated before Scout's December 2018 payment. The court reached this conclusion by relying on the notation on ConocoPhillips's check receipts. *Id.* at *4. Although the leases themselves did not require ConocoPhillips's October 2017 payments to be treated as resetting the twelve-month clock on the period of constructive production, the court held that the parties were free to—and did—designate a new period through the receipt memorializing payment. *Id.* at *3 (first citing *Steeple Oil & Gas Corp. v. Amend*, 337 S.W.2d 809, 811 (Tex. App.—Amarillo 1960, writ ref'd n.r.e.); and then citing *Mayers v. Sanchez-O'Brien Mins. Corp.*, 670 S.W.2d 704, 708 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.)).

The court concluded that "[a]pplying *Amend* and *Mayers* obligates us to interpret the notation on the second receipt as ConocoPhillips's decision to establish a shut-in royalty period differing from that set by the [first] payment." *Id.* In other words, the court concluded that the September 2017 payment operated to extend the leases through September 2018. But ConocoPhillips's next payment in October 2017 extended the leases only for the twelve-month period ending in October 2018. Stated differently, the October 2017 payment did not extend the leases for another full year; instead, it started a *new* twelve-month period such that the next payment would be due one year after the *most*

5

*recent* payment. Therefore, the court of appeals reasoned, "the anniversaries of both [ConocoPhillips payments] lapsed [in October 2018] before Scout tendered its shut-in royalty check in December 2018." *Id.* Scout petitioned this Court for review.

## II

As an initial matter, we agree with the court of appeals that the leases' savings clause is unambiguous and that it permits a lessee to secure a full year of constructive production with each $50 payment. Our "sole objective" in interpreting contractual language is to determine "the parties' true intentions as expressed in the writing." *BlueStone Nat. Res. II, LLC v. Randle*, 620 S.W.3d 380, 387 (Tex. 2021). A contract is not ambiguous simply because parties put forward different interpretations of a term. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). Rather, a contract is ambiguous if "it is reasonably susceptible to more than one meaning" and cannot "be given a certain or definite legal meaning or interpretation." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Whether a contract is ambiguous is a question of law that a reviewing court decides de novo. *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020).

Taylor concedes that the language of the leases' savings clause is unambiguous but nonetheless advances a different construction than that of Scout and the court of appeals. Under Taylor's interpretation, "upon such payment" means that the one-year period of constructive production begins anew whenever a payment is made. We agree with the court of appeals that this interpretation improperly rewrites the

6

leases' text. As the court explained, Taylor effectively reads the clause as stating that "upon such payment," constructive production will occur "*for one year from the date of payment or until another payment is tendered.*" 2023 WL 5486220, at \*2. Moreover, the court correctly read "per well per year" in conjunction with "upon such payment" to mean that each payment provides for one full year of constructive production regardless of how early the subsequent year's payment is made. *Id.* at \*3. We thus hold, as the court of appeals did, that the leases are unambiguous and that the only reasonable construction of the savings clause is that each payment provides one full year of constructive production.

Taylor complains that this interpretation of the leases improperly rewrites the savings clause by allowing the lessee to "tack on" or "stack" years of constructive production when the leases' text does not expressly permit stacking or early payment. But Taylor's interpretation of the leases would mean that lessees who pay early would pay *twice* for the same months of constructive production and thus undercut the parties' express agreement that $50 would cover an entire year. Taylor's interpretation cannot be squared with the text of the savings clause and therefore is not a reasonable one.

### III

Despite correctly concluding that ConocoPhillips's second payment did not reset the deadline under the leases' savings clause, the court of appeals held that the "Mth Begin" notation on ConocoPhillips's check receipts did. We disagree.

7

Taylor argues that the notations on the shut-in checks and receipts could constitute a new contract that controls over the original lease terms or at least could modify the shut-in period provided for in the lease. In particular, Taylor contends that "Mth Begin" expressly reflects the parties' intent that the shut-in royalty check would cover a period beginning on the date on the check receipt, regardless of whether a shut-in royalty had already been paid for part or all of that twelve-month period.

A contract will bind parties "only if its terms are sufficiently definite to enable a court to understand the parties' obligations." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000). Courts will not enforce contractual terms that are vague. *Graham-Rutledge & Co. v. Nadia Corp.*, 281 S.W.3d 683, 690 (Tex. App.—Dallas 2009, no pet.). Contractual language can be so broad as to be both "vague and ambiguous." *Finley Res., Inc. v. Headington Royalty, Inc.*, 672 S.W.3d 332, 340 (Tex. 2023). Even if the shut-in checks are alleged to constitute "modifications" or "amendments"[2] to the original lease, we must still consider whether the alleged modification reflects the parties' intent. *See Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228-29 (Tex. 1986) (holding that a contract modification "must satisfy the elements of a contract").

In holding that "Mth Begin" and the accompanying date noted on the check receipts represent a new agreement or modification of the

---

[2] "Amendment" of a contract "is embraced by the concept of contract modification" and is "synonymous" with "modification" when modification is raised as a defense to contract enforcement. *Enserch Corp. v. Rebich*, 925 S.W.2d 75, 83 (Tex. App.—Tyler 1996, writ dism'd by agr.).

8

leases, the court of appeals relied on its own precedent, *Steeple Oil & Gas Corp. v. Amend,* and another court of appeals' opinion, *Mayers v. Sanchez-O'Brien Minerals Corp.* But neither case supports its holding. In *Amend*, the lessee made a shut-in royalty payment in September 1957 with an accompanying check receipt noting that the shut-in royalty period was "from August 9, 1957, to August 9, 1958." 337 S.W.2d at 810. When the lessee made its next payment in September 1958, the court held it was too late, concluding that "the parties themselves set the anniversary date" for constructive-production payments by what was written on the check receipt. *Id.* at 811.

In *Mayers*, conversely, the court held that the parties' agreement made the lessee's second payment timely. 670 S.W.2d at 707. The lessee's initial payment was made in August 1978, but the checks and receipt stated that the payment was for a one-year period "beginning 10/6/78." *Id.* at 706. When the lessee tendered its second payment in September 1979, over one year after the first payment was made, the court held it was timely based on the check notation. *Id.* at 707. Citing *Amend*, the *Mayers* court concluded that "the period of payment shown on the receipt is controlling as to the period of time covered by the payment." *Id.* at 708.

*Amend* and *Mayers* hold that, regardless of when the lessee first tenders a shut-in royalty payment, the parties may agree on a different date for when constructive production begins, and this agreement may be reflected by a notation on the check or check receipt. We need not address whether *Amend* and *Mayers* were correctly decided nor whether the court of appeals here properly extended their holdings to apply to

9

cases in which the parties stipulate that a second payment was *early* and disagree only about that payment's effect on the previous year's payment. Instead, we simply hold that the notations on ConocoPhillips's check receipts were too vague to be given effect as a contract or a lease modification that would reset the deadline for future payments and thereby penalize ConocoPhillips for its early tender of what, under the terms of the lease, unambiguously constitutes sufficient payment for two full years of constructive production.

Certainly, the parties *could* have amended the leases by entering into a subsequent agreement reflecting their new agreed-upon terms. Had Scout and Taylor agreed on an explicit modification of the leases stating that the date a shut-in payment is made will reset the constructive-production period, courts would give full effect to their agreement. But that is not what occurred. The notations on the check receipts are too vague to constitute a new agreement or lease amendment that alters the unambiguous terms of the savings clause, in which the parties agreed that each $50 payment would compensate the lessor for one whole year of constructive production. The court of appeals erred by holding to the contrary.

## IV

Without hearing oral argument, *see* TEX. R. APP. P. 59.1, we grant Scout's petition for review, reverse the court of appeals' judgment, and reinstate the trial court's take-nothing judgment.

**OPINION DELIVERED:** December 31, 2024

10